1                        UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF MARYLAND
2                           Greenbelt Division

3   UNITED STATES OF AMERICA,      :     Docket No. 13-CR-0148-CBD1

4        Plaintiff,                :
                                         Greenbelt, Maryland
5            v.                    :     Wednesday, June 19, 2013
                                         3:17 p.m.
6   RACHEL ONDRIK,                 :

7        Defendant                 :

8   : : : : : : : : : : : : : : : : : : : : : : : : : : : : :

9

10                    TRANSCRIPT OF SENTENCING HEARING
                   BEFORE THE HONORABLE CHARLES B. DAY,
11                    UNITED STATES MAGISTRATE JUDGE

12
    APPEARANCES:
13
    For the United States        United States Attorney's Office
14  of America:                  BY:  ADAM K. AKE, AUSA
                                      ROBERT K. HUR, AUSA
15                               6500 Cherrywood Lane, Suite 400
                                 Greenbelt, Maryland  20770
16

17  Audio Operator:             CAMILLE HATCHER

18

19  Transcript prepared by:     JANICE RUSSELL TRANSCRIPTS
                                 1133 Tanager Trail
20                               Virginia Beach, Virginia  23451
                                 (757) 422-9089
21                               trussell31@cox.net

22
    Proceedings recorded by electronic sound recording; transcript
23  produced by transcription service.

24

25

1   APPEARANCES (Continued):

2   For Defendant, Rachel          THOMAS ABBENANTE, ESQ.
    Ondrik:                        1919 Pennsylvania Ave., NW, #200
3                                  Washington, DC  20006

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        P R O C E E D I N G S

2              THE COURTROOM DEPUTY:  We are here for the purpose of

3    a sentencing hearing.

4              Will counsel please identify themselves for the

5    record?

6              MR. AKE:  Good afternoon, your Honor.  Adam Ake and

7    Robert Hur for the United States.

8              THE COURT:  Thank you.  Welcome.

9              MR. ABBENANTE:  Good afternoon, your Honor.  Thomas

10   Abbenante on behalf of Ms. Ondrik and she is here --

11             THE COURT:  Good afternoon.  Welcome.

12             MR. ABBENANTE:  -- as is her husband.

13             THE COURT:  Thank you.

14             Feel free to be seated.

15             Give me just a moment, please.

16        (Pause)

17             THE COURT:  Okay.

18             Any modifications or corrections to the pre-sentence

19   report?

20             MR. ABBENANTE:  Just a couple, your Honor.

21             THE COURT:  Okay.

22             MR. ABBENANTE:  They, they're not material, I would

23   argue, but I think they need to be corrected.

24             If your Honor takes a look at Page 11 of the pre-

25   sentence report and under the Assets, 2008 Nissan Quest -- and

1  I discussed this with Mr. Mebane after I had read the report,

2  but he said it had already been sent in to the Court -- they

3  owe $10,000 on that loan for that car.

4        So they're in the --- it's a negative as far as the

5  car, which I guess would change, ultimately, what the net cash

6  flow, the monthly cash flow would be, but I just wanted to

7  point that out to the Court.

8        Also, there's a reference here with regard to the

9  traffic records, Paragraph No. 40 on Page 7 of the report, and

10 I know that your Honor handles a lot of traffic-related

11 offenses in this case.  You probably already know this, but in

12 Virginia if you have a plus on your, on your record that means

13 that that's good driving.  It's not like for any violation and

14 Mr. Mebane didn't know that and I pointed that out to him.

15       THE COURT:  The only question I had about that

16 paragraph was I thought that she didn't have a license in

17 Virginia.  So it was some question as to how she could get

18 positive points, which --

19       MR. ABBENANTE:  Well, she -- previously she did --

20       THE COURT:  She did there.

21       MR. ABBENANTE:  -- years ago.

22       THE COURT:  Okay.  That explains it.

23       MR. ABBENANTE:  Okay.  And so that's why that's

24 reflected in that, in that way.

25       THE COURT:  Very well.

1          MR. ABBENANTE:  And as a preliminary matter, your

2   Honor, I just want, I'd like to just ask the Court a question.

3          For some reason, I was, when I entered my appearance

4   in this case as counsel, for some reason I wasn't getting the

5   ECF notifications.  And Mr. Mebane had forwarded to me the pre-

6   sentence report.  But more importantly, I understand that the

7   Government had filed a motion in this case with regard to the

8   matters that were placed, that were filed under seal and that,

9   eventually, your Honor granted that motion.

10          I would just ask the Court whether or not your Honor

11   reviewed those materials.

12          THE COURT:  I did.

13          MR. ABBENANTE:  All right.

14          THE COURT:  But I have deliberately divorced my

15   knowledge of that as best I can.

16          MR. ABBENANTE:  Well, your Honor --

17          THE COURT:  That is, I am not using anything in those

18   reports for the Government's purposes, whatever that purpose

19   may be.  I just view it as a misfiled, shouldn't have been

20   filed, or for whatever reason the Government elected not to

21   file or to pursue whatever is set forth therein.

22          So that is not fair game for the Government to rely

23   upon, or this court to rely upon.

24          MR. ABBENANTE:  Well, I understand that the, that the

25   Court, I mean, that the Government has not attempted to rely on

1  because, first thing, they contained information that wasn't

2  part of the agreement.  Much, most of that information is

3  disputed and it came from a source which, you know, we, we

4  have --

5          In any event, when your Honor says that your Honor has

6  done the best you can to divorce yourself from that, are you

7  saying to me that -- are you --

8          THE COURT:  I feel very comfortable.

9          MR. ABBENANTE:  -- comfortable?

10         THE COURT:  I am not using that for any purpose.

11         MR. ABBENANTE:  All right.  Very well, your Honor.

12         The way I had planned to preface my remarks, I wasn't

13 going to assume that the Court was going to go along with our

14 agreement because you made that very clear when you accepted

15 these pleas and I know full well after doing this for a long

16 time that the Court is free to do what they think is

17 appropriate under the circumstances and obviously, the sentence

18 that you imposed on Mr. Yamatani is, in fact, within the

19 guidelines that are set forth in the pre-sentence report, which

20 we agreed to.  However, with all due respect to the Court, with

21 respect to Mr. Yamatani's sentence -- and I know that the Court

22 takes every case separately and in separate consideration and I

23 don't know all of the factors that were presented in the pre-

24 sentence report with regard to Mr. Yamatani and I don't know

25 all of the family issues that were presented in the report with

1    regard to Mr., Mr. Yamatani -- but in terms of trying to

2    distinguish what the difference might be in, in regard to the

3    case, Ms. Ondrik has never shied away from the fact that she

4    committed this -- this -- these acts in, in this case, okay?

5    She admitted full responsibility for it.  And when your Honor

6    asked Mr. Yamatani why he did it, you know, my first --

7              THE COURT:  Let me slow you down.  Don't go too fast

8    for me.

9              MR. ABBENANTE:  Okay.

10             THE COURT:  I'm trying to keep --

11             I got the impression that Ms. Ondrik also is viewed to

12   have been obstructing justice and if what you're telling me is

13   that she, when confronted or when this thing first came to

14   light, she said --

15             MR. ABBENANTE:  No.  No, I didn't mean that.

16             THE COURT:  Okay.

17             MR. ABBENANTE:  I mean when -- when she -- she's fully

18   accepted reasonability.

19             THE COURT:  Yes.

20             MR. ABBENANTE:  What -- how this whole thing started,

21   I mean, the genesis of whether, you know -- we're not arguing

22   that it's -- it was -- it was -- there's, this is an excuse or

23   anything -- but, you know, they, they picked up, they moved to

24   the Washington, D.C. area.  There's some argument to be made,

25   at least initially on Ms. Ondrik's part, that, you know, she

1  was going to be entitled to certain monies.  That came to

2  not -- that came not to pass and then they tried to submit

3  vouchers in order to get the money that they thought that they

4  were entitled to.  At some -- at a point during this process

5  they, they recognized that that, that wasn't right and then it,

6  they continued to do so and continued to pursue --

7              THE COURT:  Let me catch up with you there only

8  because I thought that the predicate offense was grounded on

9  the notion that she came here house hunting, but never house

10  hunted.  She came here charging the Government for expenses,

11  but expenses that were not incurred in relationship to that.

12              MR. ABBENANTE:  Part of it was.

13              THE COURT:  I get the point about maybe "I'm entitled

14  to some things that are legitimate expenses and the Government

15  may disagree."  That very well may not be criminal.  We all

16  have issues like that.

17              MR. ABBENANTE:  Right.

18              THE COURT:  But I got -- I thought that the plea was,

19  "I never even did the house hunting.  I never even did the

20  travel that the Government alleged."  So --

21              MR. ABBENANTE:  You're right.

22              THE COURT:  Okay.

23              MR. ABBENANTE:  I mean, I was -- I'm, I'm not

24  trying -- I'm saying there's, there's parts of this.  I'm

25  trying to --

1          THE COURT:  Okay.

2          MR. ABBENANTE:  -- put it all in perspective, okay?

3          And as far as the punishment in this case is

4    concerned, we, Ms., Ms. Ondrik, as part of the plea, obviously,

5    agreed to pay the restitution, also agreed to a fine in this

6    case, which is in excess of the fine recommended under the

7    guidelines.  It was $28,000 and that was agreed to.  And that,

8    again, I think, is punishment.

9          But with respect to Ms. Ondrik's particular situation,

10   unlike -- what I believe to be the situation with Ms. Ondrik,

11   she is the primary caretaker for two children.  Both -- I think

12   one was 5 and one is 7.  They don't have any family in this

13   area and her husband, who's also in law enforcement, is working

14   double shifts to try to keep the family afloat.  There will be

15   nobody able to care for her two children under these, if your

16   Honor incarcerates her.  There's no family around here to do it

17   and they can't afford daycare and unlike the situation with

18   Mr. Yamatani, I mean, obviously, his wife is available.  I

19   don't know what financial arrangements they can make to limit

20   her work, but the mother will be there for the children.  If

21   your Honor incarcerates Ms. Ondrik, there's nobody there for

22   her children.  There's nobody there to care for them and her

23   husband is just either going to have to quit his job to take

24   care of them fulltime.  Because I don't see any other

25   alternative at this point.

1          And so that circumstance, I think, is very different

2    from most individuals that would appear under -- in the --

3    before the Court under these circumstances.

4          And essentially, I don't know what else to say about

5    it other than that.  Because there -- this is Ms. Ondrik's

6    fault.  She did it.  She did it knowingly.  She's lost her

7    career.  She's done all those -- she suffered all the same

8    consequences that Mr. Levin brought to your attention with

9    regard to Mr. Yamatani, but the difference here is the factors

10   that I think the Court needs to consider in, in imposing a

11   sentence of incarceration in this case and those are the

12   family, the family situation as it exists before the Court and

13   which is, basically, undisputed, that she is the sole caretaker

14   of these two children.  She has been doing so while she's been

15   unemployed.  Before she was unemployed there were other

16   arrangements 'cause they could afford that.  They can't afford

17   that now.  Her husband cannot afford that and pay all the bills

18   that are required to keep his children going and keep his

19   family intact.

20         And with all due respect to the Court, an eight month

21   -- if your Honor was to consider the same sentence for

22   Ms. Ondrik, that would be absolutely devastating to this

23   family, I don't know how they'll survive that, and I would urge

24   the Court to consider an alternative, the alternative that was

25   recommended by Probation and recommended by the United States

1  in this case under these circumstances.

2              THE COURT:   Thank you.

3              I'll hear from the Government.

4              MR. AKE:   Your Honor, I can tell that the Court is

5  fully apprised of the, the 3553 factors in terms of the nature

6  and seriousness of the offense.   So I won't dwell on that.

7              The Government is making the recommendation it agreed

8  to make and, that the defendant be sentenced to a sentence of

9  probation of two years, again with the caveat that so long as

10  the Court is making the financial aspects of the judgment

11  payable immediately, are recommending that six months home

12  detention be the first portion of that probation sentence, and

13  that the Court order restitution in the amount of $14,000, a

14  fine of $28,000, and a special assessment of $25.

15              Again, the Court -- I explained to the Court in

16  Mr. Yamatani's case why the Government feels this is sufficient

17  but not greater than necessary to address the conduct involved

18  as well as to deter others that might be similarly situated.

19  The Government does maintain that this is a serious offense due

20  to the fact of the defendant's position as a special agent and

21  responsibility for investigating and prosecuting, or attempting

22  or bringing to prosecution the types of crimes that she engaged

23  in during 2009 and 2010 and, and what followed in terms of the

24  conduct.

25              But, but the Government does feel that the, the

1  probation with a period of home, a six-month period of home

2  detention is sufficient and not greater than necessary to

3  address that.

4          Thank you, your Honor.

5          THE COURT:  Thank you.

6          Ms. Ondrik, before I impose the disposition, you have

7  the right to say anything you wish to say, but before doing so

8  I'm going to ask you to stand and raise your right hand.  We'll

9  place you under oath.

10     (Defendant Ondrik sworn)

11         THE COURTROOM DEPUTY:  Will you please state your full

12  name for the record?

13         DEFENDANT ONDRIK:  Rachel Ondrik, Rachel Garrison

14  Ondrik.

15         THE COURTROOM DEPUTY:  Thank you, ma'am.

16         THE COURT:  And you have to keep your voice up.

17         Feel free to be seated and just slide the microphone

18  over toward you.

19         What, if anything, would you like to say?

20         DEFENDANT ONDRIK:  Your Honor, I've, I've made a

21  horribly grave error in, in judgment and would like to

22  apologize to the, to the Court, to the Federal Government, and,

23  and to my family.  I've learned a very, very hard lesson and

24  I've made many mistakes and I will never place myself or my

25  loved ones in this position again.

1          THE COURT:  Let me ask you this.  Slide the microphone

2    closer.

3          DEFENDANT ONDRIK:  I'm sorry.

4          THE COURT:  That's fine.

5          DEFENDANT ONDRIK:  I'm sorry.

6          As a result of my actions, I've lost my job, my

7    federal retirement, caused a great deal of embarrassment and

8    emotional turmoil and financial hardship for myself and my

9    family.  I've done untold damage to my future and my career and

10   my prospects for future work and placed myself in a position

11   where I no longer have any hope of working in the field of law

12   enforcement ever again.  I can't believe I made such a stupid

13   decision that will so greatly affect me and my loved ones for

14   the rest of our lives.

15         In addition, as a result of my actions and subsequent

16   job loss, my husband has been forced to work a great deal of

17   overtime to meet our financial responsibilities.  In addition

18   to regularly working the night shift, he has been picking up

19   every overtime shift he can in addition to his work on the

20   night shift on the SWAT team and as a firearms instructor.

21   This is an exhausting and unfair burden to him and has placed

22   my children in a situation where they have little quality time

23   with their father.

24         I'm sorry for the effect that my actions have had on

25   my husband and my children and I apologize to the Court and the

1    Federal Government.  My actions have greatly affected my

2    children.  They can feel the stress in our home, already.  They

3    miss their father greatly.  I'm deeply ashamed of myself and

4    I'm sorry I chose a path that led to such disastrous results.

5              THE COURT:  Thank you.

6              Counsel, does the husband wish to be heard?

7              Welcome, sir.  Why don't you come to the podium here.

8       (Mr. Ondrik complies)

9              THE COURT:  Why don't you give us your name for the

10   record.

11             MR. ONDRIK:  My name is Brian Ondrik.

12             Excuse me, your Honor.  I'm just a little emotional

13   right now.

14             This whole situation has placed an undue, a great

15   amount of stress on our relationship and our family and it

16   would just -- it would just -- I don't know what, what the

17   profound effect it would have if you would incarcerate my wife

18   today on me or our children.  It's just -- my whole situation

19   is just -- sorry, your Honor.

20             THE COURT:  Take your time.  It's not a problem.

21             MR. ONDRIK:  I mean, she realizes the mistakes she has

22   made.  I feel she is sorry for them and she wants nothing

23   better than to make, make it right, put this behind us, and

24   just, you know, start putting our lives back together.

25             Again, it'll just -- incarceration on this would be

1  just unfound.  I mean, in my eyes, I've -- I just -- I just

2  need my wife at home, sir, your Honor.

3          That's all I have to say.

4          THE COURT:  Thank you, sir.

5      (Pause)

6          THE COURT:  To say that I've read and reread the

7  materials that have been provided in this case more than once

8  is an understatement.  This is tragic, one of the most tragic

9  things that we often see.  I've listened carefully to your

10  statement, your prepared remarks, as well as those of

11  Mr. Yamatani's.  I think they're genuine.  I do.

12          And if there's a person in the courtroom who cannot

13  feel the pain that your husband feels at this hour, that person

14  doesn't have a heart.  You've spoken about the difficulties

15  he's facing and quite frankly, the toughest job in the

16  courtroom over the last 15, 20 minutes has been that of your

17  counsel.  'Cause like the man who sat in that seat before him,

18  he's dealing with the unexpected.  Done a good job and I don't

19  mean that just to be nice.

20          One of the responsibilities of the court is to make

21  sure that a sentence that is imposed is individually crafted

22  and certainly, the cloud in this room has been the eight months

23  that has just been handed out.  That's the, the 600-pound

24  gorilla.  That is the boulder being pushed uphill and I have to

25  look at each case differently.  Even though the crime may be

1  the same, the people involved may be different.  And while I --

2  what I'm applauding your counsel on is his abilities and

3  attempts to distinguish your circumstance from Mr. Yamatani's.

4  Same crime, same nearly $40,000 in play that was attempted to

5  be obtained from the Government.  I assume that the Government

6  only put $14,000 to your account as actually obtained or

7  something because that's the amount of restitution that's been

8  agreed upon.  It's not for me to look behind that, either.

9         And the hat that counsel rightfully hangs on the wall,

10  or the peg that he rightfully tries to hang his hat on is the

11  impact upon your family.  Mr. Yamatani had an impact with his

12  family.  Your husband's working double shifts.  He, too, is

13  involved in law enforcement.  Both families are facing

14  unimaginable changes where incarceration is involved.  For

15  anyone who sits up here in a black dress who claims to know it

16  all, that's a bad statement.  It's wrong, in error.  Small

17  children involved.

18         The court is required to be no respecter of persons,

19  whether rich, poor, old, or young, white collar, blue collar,

20  with children, without children.  Fair to argue that the court

21  should be concerned about some of the collateral consequences

22  impact upon and effect on a family affair and while I heard you

23  indicate that you were embarrassed or disappointed in yourself

24  because you made this one decision that was so horrible, I

25  would be remiss in not saying that this was not one mistake.

1    This was not one decision.  This was a decision and another

2    decision and another decision reduced to writing.  I don't

3    know, but probably under an oath if I know the Federal

4    Government enough, compounded by insistence, persistence in

5    that belief even when faced with the knowledge that others know

6    the truth.

7           You are right to have differences of opinion as to

8    what the right outcome here is.  That's, that's what we do.

9    And I guess I could sum it up by saying if your offense

10   justified four strikes at the law (hits hand on bench four

11   times), that would be judgment.  If somebody decided not to

12   give you four, but (hits hand on bench three times), you might

13   call that mercy.  And still another one may decide to give you

14   less than that and nothing at all.  That would be grace.

15          Grace is not in play here.  Justice is very much in

16   play and we can disagree as to what is the most appropriate

17   remedy.  We've got some help with that in terms of the

18   sentencing guidelines.  Everyone has rightfully made arguments

19   about it and as my judicial colleagues have whined about for

20   years, we hate guidelines, at least in their old form because

21   it required, it required the court to do something of a certain

22   degree.  The Supreme Court eventually made it far more advisory

23   and, therefore, I think that the right balance has been struck,

24   that is, we need some kind of a national standard as to what an

25   appropriate sentence should be, but give the Judges discretion

1    to look at each case individually and to mete out punishment,

2    restitution, whatever.

3         I have sent many an elderly person to jail, 90 and

4    older, and I've sent many a single parent to jail knowing full

5    well that children may be going to live with grandparents or

6    going to live with someone in protective, or Child, Child

7    Services, or something, but on this record I do not find a

8    material difference between your conduct and your circumstances

9    compared to Mr. Yamatani's.

10        So your sentence is eight months, Bureau of Prisons.

11   Restitution is required of $14,000, a fine is imposed of

12   $28,000, $25 special assessment, and one year of supervised

13   release.

14        My condolences to your husband and I know you'll get

15   out and y'all will make a go of it.  This is not meant to be a

16   sentence upon him or your children, but you're in the custody

17   of the U. S. Marshal.

18        MR. ABBENANTE:  Your Honor, may I just address the

19   Court with regard to -- again, I, I think that the

20   circumstances here with regard to even voluntary surrender are

21   different with regard to Ms. Ondrik.

22        First, as your Honor knows, she is a law enforcement

23   officer and I don't know where --

24        THE COURT:  Was.

25        MR. ABBENANTE:  Was a law enforcement officer -- and I

1   don't know where she will be placed within the, the local

2   detention centers -- but I would urge the Court to allow the

3   Bureau of Prisons to designate a federal facility for her where

4   at least we can arrange that there be some sort of protective

5   custody for her, No. 1.

6           But, No. 2, if your Honor will at least allow a brief

7   period for her to self-surrender.  If your, if your Honor is

8   not willing to let her self-surrender until the Bureau of

9   Prisons designates, at least a brief period of time so that she

10  can, her and her husband can try to make some arrangements for

11  her children.  Because like tomorrow, her husband has to be at

12  work and everything is still in place, but he, there's no one

13  to take care of the children and I would just urge the Court to

14  at least allow her a week, if your Honor is not willing to

15  allow her to voluntarily surrender when the Bureau of Prisons

16  designates, at least allow her a week so that she can try to

17  make some arrangements either with her brother or her father or

18  somebody to come in here and pitch in.  Because there is no one

19  here to help her husband and we can't get anybody here

20  overnight to do it.

21          THE COURT:  Your request is reasonable, but your

22  request is likewise denied.

23          I will sign any order, if you like, with respect to

24  her being in protective custody until the U. S. Marshals

25  Service can do better and I will make that oral request to them

1  now through the Court Security Officers that are here.

2              Thank you.

3              MR. ABBENANTE:  Very well, your Honor.

4              THE COURT:  Thank you.

5              Mr. Levin?

6              MR. LEVIN:  Could you -- your Honor, if I may?

7              THE COURT:  Sure.

8              MR. LEVIN:  Could you make the same oral request --

9              THE COURT:  Yes.

10             MR. LEVIN:  -- on behalf of Mr. Yamatani?

11             THE COURT:  Yes.  I am specifically requesting -- and

12  I see we've got a Marshal here as well -- that these defendants

13  be in protective custody until the U. S. Marshals Service and

14  the Bureau of Prisons makes an official determination of the

15  proper placement.

16             MR. ABBENANTE:  Well, your Honor, can you also direct

17  orally or on the record that the Bureau of Prisons try to

18  expedite the designation?

19             THE COURT:  I will do that.

20             MR. ABBENANTE:  And recommend Cumberland or any

21  facility close to this jurisdiction.

22             THE COURT:  I will make that recommendation.  I will

23  tell you, however, that the Bureau of Prisons for some reason

24  oftentimes does things their own way.

25             MR. ABBENANTE:  I understand.

1            THE COURT:  Fair enough.

2            Thank you.

3            Yes, sir?

4            MR. AKE:  Your Honor, I just ask the Court -- and I'm

5  not sure if this makes any, creates any problem for

6  Mr. Yamatani -- but if you could advise the defendant of her

7  appellate rights.

8            THE COURT:  I'm sorry?

9            MR. AKE:  If you could advise the defendant --

10            THE COURT:  Yes.

11            MR. AKE:  -- of her rights.

12            THE COURT:  They both have the right to an appeal

13  within 14 days and it must be filed in the clerk's office here.

14            Thank you.

15            We'll be in recess.

16            THE COURTROOM DEPUTY:  All rise.

17        (Proceedings concluded at 3:48 p.m.)

18

19

20

21

22

23

24

25

1                            <u>CERTIFICATE</u>

2           I, court approved transcriber, certify that the

3    foregoing is a correct transcript from the official electronic

4    sound recording of the proceedings in the above-entitled

5    matter.

6    /s/ *Janice Russell*                    June 25, 2013

7    Janice Russell, Transcriber                Date

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25